**Richard DANZIG, Plaintiff,**

v.

**RELIANCE STANDARD LIFE INSURANCE COMPANY, Defendant.**

**No. 85–6626–CIV–GONZALEZ.**

United States District Court, S.D. Florida, N.D.

Sept. 8, 1987.

Andrea Wolfson, Ft. Lauderdale, Fla., for plaintiff.

Maria Sperando, Ft. Lauderdale, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GONZALEZ, District Judge.

**THIS CAUSE** was heard by the court at a non-jury trial on August 5 and 6, 1987. The court has considered the testimony and evidence submitted on behalf of the parties. The court has also made determinations as to the credibility of the witnesses and documentary evidence. The court now makes and enters the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Plaintiff Richard Danzig was employed by the United States Postal Service in Wilton, Connecticut in April 1975.

2. In April 1975, plaintiff purchased a disability insurance policy from defendant Reliance Standard Life Insurance Company. Plaintiff has paid and continues to pay the premiums for this policy.

3. In October 1982, Mr. Danzig transferred to the United States Post Office in West Palm Beach, Florida, where he worked as a distribution clerk.

4. A distribution clerk is responsible for sorting and distributing mail to post offices and various carrier routes. Clerks may also perform a variety of services at public windows at post offices, post office branches or stations. They perform related duties as assigned. The work involves continuous standing, stretching and reaching. Clerks may be required to handle heavy stacks of letter mail or parcel post weighing up to 70 pounds.

5. Plaintiff testified that his duties included performing a "flip-flop" operation and flat sorting. The "flip-flop" requires standing at a conveyor belt and flipping envelopes so that they face the same direction. Flat sorting involves tossing larger pieces of mail, such as manila envelopes, into separate bins.

6. Gary Goodrich, a distribution clerk at the West Palm Beach Post Office and plaintiff's union representative in 1983–84, testified that employees normally work the flip-flop operation for 2 to 2½ hours with a ten minute rest period. This testimony, corroborated by Barbara Schaler, a tour supervisor at the West Palm Beach facility, contradicts plaintiff's allegation that he was required to work the flip-flop operation for six hours without a break. The court finds the testimony of Mr. Goodrich and Ms. Schaler to be credible.

7. Prior to his transfer to West Palm Beach, Mr. Danzig suffered a lower back injury. He was examined by a number of chiropractors and orthopedic surgeons between February 1983 and July 1985.

8. Dr. Graham Whitfield, testifying by deposition, stated that he saw Mr. Danzig on September 13, 1983. Dr. Whitfield concluded that plaintiff could stand for between one to three hours per day, could lift between 10 and 20 pounds, could perform occasional reaching and should probably alternate sitting and standing.

9. Dr. David Boschowitz, a chiropractic orthopedist, examined plaintiff on May 24, 1984. Dr. Boschowitz testified that plaintiff could not lift over 70 pounds, could not work the flip-flop operation for more than two hours, could not lift more than 20 to 30 pounds and could only stand 45 to 60 minutes at a time. Dr. Boschowitz testified that if the Postal Service had been willing to place Mr. Danzig in a position which met those restrictions, plaintiff would have been able to work. Dr. Boschowitz recommended that plaintiff be placed on light duty for 60 to 90 days.

10. Dr. Steven Silverman regularly treated plaintiff between June 15, 1983 and March 21, 1984. Dr. Silverman testified in his deposition that by March 21, 1984, he thought plaintiff should try to work and so encouraged Mr. Danzig. Dr. Silverman concluded that plaintiff could lift up to 100 pounds and could stand for normal periods of time if given a normal break period.

11. As a result of his back injury, Mr. Danzig made three requests for light duty at the Post Office. Each request was granted, the last request having been made and granted in April 1983. Each request for light duty status was supported by a report from a different chiropractor.

12. Alvin Waller, manager of distribution at the West Palm Beach facility was responsible for holding light duty hearings during the time Mr. Danzig worked at the facility.

13. Mr. Waller testified that a light duty classification limits the number of hours and the type of work an employee must perform. Mr. Waller also testified that while Mr. Danzig was on light duty status, the amount of time he spent standing and on the flip-flop machine was limited to two hours. The maximum amount of weight Mr. Danzig was required to lift while on light duty status was 8 to 10 pounds.

14. The work required of plaintiff while on light duty status was consistent with the limitations recommended by Mr. Danzig's chiropractors.

15. Mr. Danzig testified that his supervisors continued to put him on the flip-flop operation notwithstanding his light duty status. Although Mr. Danzig stated at trial that he could not perform both the flip-flop operation and flat throwing, at his deposition Mr. Danzig claimed that the flip-flop operation was the only duty he could not perform and that he was claiming total disability under Reliance's policy because of his inability to perform that function. Mr. Danzig admits that he could throw mail without any problem to his back.

16. John Nasipak, director of employee relations at the West Palm Beach Post Office, testified that employees who worked for the Postal Service for more than five years had a right to request permanent light duty status. Mr. Nasipak also stated that there were numerous light duty positions available at the West Palm Beach facility. In fact, Mr. Nasipak testified that a quadraplegic was employed at the facility.

17. Mr. Nasipak also testified that if Mr. Danzig were found eligible for light duty status, he would have received it.

Despite his potential eligibility for light duty status, Mr. Danzig never applied for light duty status.

18. On May 31, 1983, Mr. Danzig was notified that he was being fired from the Postal Service effective July 31, 1983. Mr. Danzig was also suspended for 30 calendar days effective June 1, 1983.

19. Ms. Schaler testified that plaintiff was fired for improper conduct and for failure to follow written instructions.

20. Mr. Danzig's co-workers had complained that Danzig had sexually harrassed female employees, bumped into employees on the workroom floor, and threatened to "blow postal workers away" if he was fired.

21. After investigating these complaints, Ms. Schaler determined that the conduct complained of had occurred. Mr. Danzig was ordered to undergo a psychiatric evaluation for fitness for duty.

22. Mr. Danzig did undergo psychiatric testing, but would not permit release of the psychiatrist's report even though he had been ordered to release it. Mr. Danzig was subsequently fired for both improper conduct and refusal to release the psychiatrist's report.

23. Mr. Danzig filed a claim for disability benefits with Reliance on June 1, 1983, the day after he was fired from the Post Office. Despite having been fired, Mr. Danzig listed his occupation on the claim form as a U.S. Postal Service Distribution Clerk.

24. Plaintiff claims that he had been told by a Reliance employee to put distribution clerk on the form, despite the fact that he told Reliance that he had been fired. The court finds such an allegation to be not credible. Support for this conclusion is found in a letter from Reliance to plaintiff dated October 11, 1983 in which Reliance asked Mr. Danzig whether his employer would be receptive to his working modified job duties.

25. Plaintiff also stated on his claim form that he first consulted a physician for his back on June 15, 1983. He failed to tell Reliance that he suffered from back problems prior to June 15, 1983 and had both consulted chiropractors and continued to work.

26. Reliance paid Mr. Danzig disability benefits of $600.00 per month from September 1983 through April 1984. Reliance stopped paying Mr. Danzig benefits when it received Dr. Silverman's report that Mr. Danzig's condition had improved and that he was capable of doing his job.

27. Plaintiff filed this action against Reliance Standard Life Insurance Company on July 3, 1985, alleging that Reliance breached its contract for disability benefits by refusing to honor Danzig's claim for benefits.

## CONCLUSIONS OF LAW

1. In order to recover in this case, plaintiff must prove, by a preponderance of the evidence, that he was, prior to instituting this action, totally disabled. *Equitable Life Assurance Society of the United States v. Wiggins,* 115 Fla. 136, 155 So. 327 (1934).

2. The disability policy in question stated that an "insured shall be considered totally disabled while he is completely unable to perform each and every duty pertaining to his occupation...."

3. Under Florida law, the term "total disability" under a policy such as the Reliance policy in issue "does not mean a state of absolute helplessness. It means the inability on the part of the insured to do *substantially all* of the material acts necessary to the insured's engaging in any occupation for remuneration or profit, taking into consideration his mental and physical capacities so to do if he so worked." *Equitable Life Assurance Society of the United States v. McKeithan,* 119 Fla. 486, 160 So. 883, 884 (1935) (emphasis added).

4. "It is necessary to look to the insured's occupation as a whole in order to determine whether the insured can no longer perform his occupational duties...." *Sun Life Insurance Company of America v. Evans,* 340 So.2d 957, 959 (Fla.Dist.Ct. App.1976).

5. Testimony propounded at trial established that the flip-flop operation was the

only duty that Mr. Danzig could not perform.

6. The testimony also established that there were various "light duty" positions available at the West Palm Beach Post Office which Mr. Danzig was capable of performing.

7. Given the facts as set forth above, Mr. Danzig has failed to prove by a preponderance of the evidence that he was unable to perform all substantial and material acts necessary in his usual and customary manner. Accordingly, Mr. Danzig has failed to prove that he was totally disabled from his occupation as a Distribution Clerk in April 1984 and thereafter when Reliance refused to continue disability benefits.

8. Consequently, the court finds that Mr. Danzig was not disabled under the terms of the insurance policy in April 1984 or any time thereafter. Accordingly, it is hereby

ORDERED AND ADJUDGED that judgment be entered on behalf of defendant Reliance Standard Life Insurance Company and against plaintiff Richard Danzig.

DONE AND ORDERED at Chambers, Fort Lauderdale, Florida, this 8th day of September 1987.